IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.               Case No. 15-10150-01,02-JTM

SHANE COX and
JEREMY KETTLER,

    Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Shane Cox's motion to dismiss (Dkt. 63). Defendant Jeremy Kettler joins in the motion. The motion argues that the National Firearms Act (NFA) is unconstitutional because it amounts to "regulatory punishment" rather than imposition and enforcement of a valid federal tax. Defendants further argue that the NFA violates the Second and Tenth Amendments to the U.S. Constitution. Dkts. 63, 78.

This case has generated significant interest within the District of Kansas and beyond. Many concerned persons have written emails or called the court's chambers to express their views. Judges are not allowed to publicly comment on pending cases, but I believe it is important to give a clear explanation of the court's decision and the reasons behind it to all who are interested. In order to do that, I begin with a summary of the court's obligations, the relevant law, and how the law applies to the facts of the case.

Before assuming office, every justice or judge of the United States courts must take the following oath:

> I [name], do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as [a judge] under the Constitution and laws of the United States. So help me God.

28 U.S.C. § 453.

This oath requires a judge to uphold the Constitution and laws of the United States, as interpreted by the United States Supreme Court and the Tenth Circuit Court of Appeals. Where there is a decision on any point of law from the Supreme Court or the Tenth Circuit, or both, I am bound to follow those decisions. This is true whether the decision is absolutely identical, or whether it sets out a principle of law that applies equally to different facts. As a district court judge, I am not empowered to do what I think is most fair – I am bound to follow the law.

The U.S. Constitution provides in part that the Constitution and laws of the United States "shall be the supreme Law of the Land," binding all judges in every state, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." In other words, United States District Courts are bound by federal law, even if a state law says something to the contrary.

The National Firearms Act (26 U.S.C. § 5861 et seq.) is a federal law that imposes a tax and licensing requirement on firearms dealers. It includes silencers among the items subject to registration and taxation. Eighty years ago, the Supreme Court upheld the NFA as a valid exercise of Congressional taxing power. *Sonzinsky v. United States*,

300 U.S. 506 (1937). The Supreme Court reaffirmed this point in *Nat'l. Fed'n of Indep. Bus. Women v. Sebelius*, 132 S.Ct. 2566 (2012). Further, the Supreme Court has held that if Congress has exercised a valid power, such as its taxing power, then the Tenth Amendment "expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992).

This leaves the Second Amendment. The Supreme Court, while recently recognizing that individuals have a right to "keep and bear Arms," also said that the Second Amendment is not absolute, and that nothing in its decision should be interpreted "to cast doubt on … laws imposing conditions and qualifications on the commercial sale of arms." *Dist. of Columbia v. Heller*, 128 S.Ct. 2783, 2816-17. The National Firearms Act is such a law.

As is more fully set out below, the Constitution and Supreme Court decisions discussed in this opinion compel the result this court reaches in upholding the constitutionality of the National Firearms Act and in denying the defendants' motion to dismiss.

**I. Supremacy Clause.**

The Constitution of the United States provides in part that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof …shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI. This necessarily makes the question presented by defendant's motion one of federal law. If the NFA is otherwise consistent with the U.S. Constitution and is a

3

valid exercise of Congress's power to tax spelled out in the Constitution, then it is "the supreme Law of the Land," notwithstanding "any Thing in the … Laws of any State to the Contrary."

The defendants argue that Kansas's adoption of the Second Amendment Protection Act (SAPA), K.S.A. § 50-1204, somehow rendered the National Firearms Act unconstitutional. Dkt. 63 at 6. This court has no authority to construe SAPA or to determine what it means; that is a task reserved to the Kansas courts. But the Constitution could not be clearer on one point: if the National Firearms Act is a valid exercise of Congressional taxing power, and if it does not infringe on rights granted in the U.S. Constitution, then it is the "supreme Law of the Land," regardless of what SAPA says.

**II. Is the NFA a valid exercise of Congress's taxing authority?**

The Constitution gives the Congress certain enumerated powers. Among those is the authority to impose and collect taxes, and to enact laws for carrying out the taxing regimen. *See* U.S. Const., art. I, § 8 (The Congress shall have Power to lay and collect Taxes,… to pay the Debts and provide for the common Defence and general welfare of the United States" [and] "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers").

In 1937, the Supreme Court of the United States addressed "whether section 2 of the National Firearms Act …, which imposes a $200 annual license tax on dealers in firearms, is a constitutional exercise of the legislative power of Congress." *Sonzinsky v. United States*, 300 U.S. 506, 511 (1937). The case involved the criminal conviction of a

man charged with unlawfully carrying on a business as a dealer in firearms without having registered or paid the tax required by the NFA. The defendant argued "that the present levy is not a true tax, but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms, the local regulation of which is reserved to the state because [it is] not granted to the national government." *Id*. at 512. He argued that the cumulative effect of imposing taxes on the manufacturer, dealer, and buyer of a covered firearm was "prohibitive in effect and … disclose[s] unmistakably the legislative purpose to regulate rather than to tax." *Id.* at 512-13. The Supreme Court flatly rejected the argument, finding that because the NFA "is not attended by an offensive regulation, and since it operates as a tax, it is within the national taxing power." *Id.* at 513.

*Sonzinsky* has never been reversed, vacated or modified by the Supreme Court. Only recently, in *Nat'l Fed'n Of Indep. Bus. Women v. Sebelius*, 132 S.Ct. 2566 (2012), where the Supreme Court upheld the Affordable Care Act's "individual mandate" as a valid exercise of Congress's taxing power, the Court cited *Sonzinsky* for the proposition that a tax is not invalid merely because it seeks to influence behavior, noting "we have upheld such obviously regulatory measures as taxes on selling … sawed-off shotguns," and observing that "[e]very tax is in some measure regulatory" because it "interposes an economic impediment to the activity…." *Nat'l Fed'n of Indep. Bus. Women*, 132 S.Ct. at 2596 (citing *Sonzinsky*, 300 U.S. at 506, 513)). Because *Sonzinsky* remains a valid Supreme Court decision, it is "the supreme Law of the Land" on this issue.

Defendant urges the court to find the NFA invalid based on the observation in *Nat'l Fed'n of Indep. Bus. Women* that "there comes a time in the extension of the penalizing features of [a] so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment." *Id.*, 132 S.Ct. at 2599-2600. That argument, however, is precisely the one rejected by the Supreme Court in *Sonzinsky*. Unless or until the Supreme Court decides otherwise, this court is bound by *Sonzinky's* conclusion that the NFA represents a valid exercise of Congress's constitutional power to levy taxes. *See also United States v. Houston*, 103 Fed.Appx. 346, 349–50 (10th Cir. 2004) ("Mr. Houston fails to establish 26 U.S.C. § 5861(d) and its parent act are beyond Congress's enumerated power to either regulate commerce through firearms registration requirements, or impose a tax thereon."); *United States v. Roots*, 124 F.3d 218 (Table), 1997 WL 465199 (10th Cir. 1997) ("*Lopez* does not undermine the constitutionality of § 5861(d) because that provision was promulgated pursuant to Congress's power to tax"). The same conclusion has been reached by every federal court of appeals to have addressed the issue since adoption of the NFA.[1]

---

[1] *See United States v. Village Center*, 452 F.3d 949, 950 (8th Cir. 2006) ("irrespective of whether § 5861(c) is a valid exercise of Congress's commerce clause authority … it is a valid exercise of Congress's taxing authority"); *United States v. Lim*, 444 F.3d 910, 914 (7th Cir. 2006) ("Section 5861(d), as applied to Lim's possession of the sawed-off shotgun, is a valid use of Congress's taxing power"); *United States v. Pellicano*, 135 F. Appx. 44, 2005 WL 1368077 (9th Cir. 2005) (valid exercise of taxing power); *United States v. Oliver*, 208 F.2d 211 Table), 2000 WL 263954 (4th Cir. 2000) (the weapon need not have traveled in interstate commerce because § 5861 "has been held to be a valid exercise of the power of Congress to tax"); *United States v. Gresham*, 118 F.3d 258, 261-62 (5th Cir. 1997) ("Gresham charges that Congress has used the taxing power as a pretext to prohibit the possession of certain disfavored weapons, without any rational relationship to the revenue-raising purposes of the Internal Revenue Code. … To the contrary, it is well-settled that § 5861(d) is constitutional because it is 'part of the web of regulation aiding enforcement of the transfer tax provision in § 5811.'"); *United States v. Dodge*, 61 F.3d 142, 145 (2nd Cir. 1995) (the registration requirement "bears a sufficient nexus to the overall taxing scheme of the NFA and, therefore, assists the government in collecting revenues.").

Defendant cites the Tenth Amendment and argues that the NFA is invalid because it has "invaded an area of law that has traditionally been reserved to the States." Dkt. 63 at 6. But if the NFA is otherwise consistent with the Constitution and constitutes a valid exercise of Congress's taxing power – as the Supreme Court said it did in *Sonzinsky* – then it does not run afoul of the Tenth Amendment. *See New York v. United States,* 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."). Again, the Supreme Court in *Sonzinsky* specifically rejected the defendant's claim that the NFA was invalid because it regulated on a matter that was reserved to the states. *Sonzinsky*, 300 U.S. at 512.

### III. Is the NFA consistent with the Second Amendment?

Defendant's original motion to dismiss did not argue that the NFA violates the Second Amendment. *See* Dkt. 63. His response to the State of Kansas's brief, however, relies almost exclusively on the Second Amendment. Dkt. 78. Be that as it may, a review of case law shows that defendant's Second Amendment argument is also foreclosed by Supreme Court precedent.

The Second Amendment provides that "the right of the people to keep and bear Arms … shall not be infringed." U.S. Const. amend II. In striking down a District of Columbia statute that essentially prohibited the possession of useable handguns in the home, the Supreme Court held that the Second Amendment "confer[s] an individual

right to keep and bear arms." *Dist. of Columbia v. Heller*, 128 S.Ct. 2783 (2008). This amendment protects the right of law-abiding citizens to keep and bear arms that are in common use for traditionally lawful purposes, such as self-defense. *See also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) ("in *Heller*, we held that individual self-defense is 'the *central component*' of the Second Amendment right.") (citing *Heller*, emphasis in original).

"Like most rights, the right secured by the Second Amendment is not unlimited." *Id*. at 2816.  *Heller* noted the amendment did not confer a right to keep and carry *any* weapon for *any purpose* whatsoever. For example, the Court observed that prohibitions on carrying concealed weapons had long been upheld under the Second Amendment and under similar state laws. *Id*. Without defining the precise scope of the right to keep and bear arms, the Supreme Court pointed out that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms*." *Id*. at 2816-17 (emphasis added).

In *United States v. Miller*, 307 U.S. 174 (1939), two defendants were criminally charged with violating the NFA by transporting a short-barreled shotgun in interstate commerce without paying the tax and obtaining the approval required by the NFA. A U.S. District Court dismissed the charge, finding that it violated the Second Amendment. But the Supreme Court reversed that ruling because "we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id*.

at 178.² In *Heller*, the Supreme Court reviewed *Miller* and indicated that it remains good law, stating: "We therefore read *Miller* to say … that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope" of the Second Amendment right. *Heller*, 128 S.Ct. at 2815-16. So, as *Miller* holds, the Second Amendment protects the sorts of weapons "in common use" but does not extend to "the carrying of 'dangerous and unusual weapons.'" *Heller*, 128 S.Ct. at 2817.

Defendant Cox was convicted of three different types of NFA violations. The first (Count 3) was for possessing a short-barreled rifle without registering it and paying the tax required by the NFA. Such a weapon is clearly comparable to the short-barreled shotgun at issue in *Miller*. No suggestion or showing is made that short-barreled rifles have been in common use by law-abiding citizens for lawful purposes. The court must therefore conclude under *Miller* that they fall outside the scope of the Second Amendment. *See Heller*, 128 S.Ct. at 2814 ("*Miller* stands … for the proposition that the Second Amendment right … extends only to certain types of weapons."); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992) ("It is clear … that the [NFA's] object was to regulate certain weapons likely to be used for criminal purposes, just as

---

² At the time of the *Miller* decision, the firearms covered by the NFA included "a muffler or silencer for any firearm…." *See Miller*, 307 U.S. at 175, n.1 (quoting Act of June 26, 1934, c. 757, 48 Stat. 1236-1240, 26 U.S.C.A. § 1132 *et seq.*). The NFA at that time also provided that "[a]ny person who violates or fails to comply with any of the requirements of [this Act] shall, upon conviction, be fined not more than $2,000 or be imprisoned for not more than five years, or both, in the discretion of the court." *Id*. *Miller* also rejected an argument that the NFA was not a valid revenue measure, stating that "[c]onsidering *Sonzinsky v. United States*, [supra, and other cases] the objection that the Act usurps police power reserved to the States is plainly untenable." 307 U.S. at 177-78.

the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used"); *United States v. Gonzales*, 2011 WL 5288727 (D. Utah Nov. 2, 2011) (short-barreled rifle was not a constitutionally protected arm under *Heller*); *United States v. Barbeau*, 2016 WL 1046093, *4 (W.D. Wash. Mar. 16, 2016) (defendant's possession of a short-barreled rifle was not protected by the Second Amendment); *United States v. Gilbert*, 286 F.App'x 383, 386, 2008 WL 2740453 (9th Cir. 2008) ("Under *Heller*, individuals still do not have a right to possess [machine guns] or short-barreled rifles").

The second type of violation at issue here was making, possessing, or transferring silencers without registering or paying the tax required by the NFA. While it is certainly possible to possess silencers for lawful purposes, no showing is made that they are a type of arm "in common use" covered by the Second Amendment. *See United States v. McCartney*, 357 F.App'x 73, 77, 2009 WL 4884336, *3 (9th Cir. 2009) ("Silencers, grenades, and directional mines are not 'typically possessed by law-abiding citizens for lawful purposes' … and are less common than either short-barreled shotguns or machine guns."); *United States v. Perkins*, 2008 WL 4372821, *4 (D. Neb. Sept. 23, 2008) ("silencers/suppressors 'are not in common use by law abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use'"); *United States v. Garnett*, 2008 WL 2796098, *4 (E.D. Mich. July 18, 2008) ("Nothing in [*Heller*] … casts doubt on the constitutionality of federal regulations over [machine guns] and silencers at issue in this case."). Because the foregoing arms are outside the scope of Second Amendment

10

protection, the application of the NFA to persons possessing, transferring or making such items does not infringe on Second Amendment rights.

Finally, defendant Cox's third type of conviction was for engaging in business as a dealer or manufacturer of silencers without paying the appropriate federal tax and registering. Defendant's motion does not address this charge specifically, but it is clearly one of the federal "laws imposing conditions and qualifications on the commercial sale of arms" that *Heller* said were permissible under the Second Amendment. Regardless of the level of scrutiny applied, a long-standing NFA regulation requiring a commercial firearms dealer to obtain a federal license and pay the federal tax required by the NFA before engaging in the firearms business would clearly pass muster under the Second Amendment. *See United States v. Hosford*, 843 F.3d 161, 166 (4th Cir. 2016) ("the prohibition against unlicensed firearm dealing is a longstanding condition or qualification on the commercial sale of arms and is thus facially constitutional"). In sum, binding Supreme Court precedent – i.e., *Sonzinsky, Miller, and Heller* - shows that the NFA, both on its face and as applied, is a valid and constitutional exercise of Congress's authority to levy taxes.[3]

---

[3] It bears pointing out how different the NFA is from the statute struck down in *Heller*. *Heller* involved a law *banning* an "entire class of 'arms' that [was] overwhelmingly chosen by American society" for the lawful purpose of self-defense, and it extended the ban "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 128 S.Ct. at 2817. By contrast, the NFA deals with weapons or accessories not in common use, and it does not ban possession of those items, but only requires that a person register and pay a federal tax before possessing them.

**IV. Congress's authority to regulate interstate commerce.**

The U.S. Constitution also gives Congress the power "To regulate Commerce … among the several States…." U.S. Const., art. I, § 8. The Supreme Court has held that this clause does not permit Congress to regulate purely local activities. *See United States v. Lopez*, 514 U.S. 549 (1995). But Supreme Court case law also "firmly establishes Congress's power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Thus, "[w]hen Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." *Id*. [4]

The court's conclusion that the NFA is a valid exercise of Congress's taxing power makes it unnecessary to decide whether the NFA is also a valid exercise of Congress's power to regulate interstate commerce. *Cf. Montana Shooting Sports Ass'n. v. Holder*, 727 F.3d 975, 982 (9th Cir. 2013), *cert. denied*, 134 S.Ct. 955 (Jan. 13, 2014) (finding that under *Raich*, Congress can exercise its commerce power to validly regulate manufacture of firearms made within the State of Montana, notwithstanding Montana

---

[4] In *Raich*, the question was whether Congress could regulate a person's possession of medical marijuana in California when the marijuana was entirely locally grown and locally possessed, and was lawful to possess under California law. The Supreme Court found that "[g]iven the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere, … and concerns about diversion into illicit channels, we have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the [Controlled Substances Act]." *Raich*, 545 U.S. at 22. Thus, Congress "was acting well within its authority to 'make all Laws which shall be necessary and proper' [to] 'regulate Commerce … among the several States.'" *Id. See also id*. at 35 (Scalia, J., concurring) ("Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.").

Firearms Freedom Act declaring otherwise). Accordingly, the court does not address that issue.

## V. Conclusion.

The Supreme Court cases cited above establish that the NFA provisions under which defendants were convicted are valid and constitutional acts adopted by Congress pursuant to its authority to levy and enforce the collection of taxes. As such, they constitute the "the supreme Law of the Land," notwithstanding "any Thing in the … Laws of any State to the Contrary." U.S. Const., art. VI.

IT IS THEREFORE ORDERED this 31st day of January, 2017, that the defendants' motion to dismiss (Dkt. 63) is DENIED.

                                            ___s/ J. Thomas Marten_____
                                            J. THOMAS MARTEN, JUDGE